The first case on the call of the docket is Agenda No. 1, Case No. 130932, People v. Johnson. Is the attorney for the appellant prepared to proceed? Please proceed, Counselor. Good morning, Your Honors. May it please the Court. My name is Brad Jarka from the Office of the State Appellate Defender, and I represent the defendant appellant and cross-appellee Gregory Johnson. This case has grown in complexity since this Court granted leave to appeal, but at its core are two foundational principles. As to both the merits and remedy, Gregory Johnson has a fundamental due process right to have him fit to plead guilty, a right this Court described more than half a century ago in People v. Reeves as a right as old as our concept of liberty. Second, as to remedy, the United States Supreme Court has never condoned a retrospective inquiry as a constitutionally adequate remedy for errors in fitness proceedings, and neither has this Court outside of the narrow context of errors under a no longer in effect version of the psychotropic medication statute. With these principles in mind, this Court should affirm in part the appellate court's judgment finding error at the trial court's restoration hearing, and reverse in part its constitutionally inadequate remedy vacating only the order restoring Mr. Johnson to fitness and remanding for retrospective proceedings. This Court should instead vacate Mr. Johnson's plea and remand for new proceedings at which his fitness can be adequately reassessed if necessary. Counsel, did you raise the issue of basically reversing the trial court, the circuit court, regarding the initial finding of fitness, the restoration? Did you raise that issue? So the issue is raised in both the written motion to withdraw the guilty plea and at the hearing on the motion to withdraw the guilty plea. So what's the language in the written motion? I think this was an amended motion, right, that counsel actually filed. What's the language in that motion that raises the issue of the trial court's initial decision restoring him to fitness a little bit before the actual plea was taken? Correct, Your Honor. So I believe it's paragraph four and paragraph six of the amended motion to withdraw the guilty plea. They draw the court's attention to the inconsistencies in the October 2018 status report, the inconsistencies between the October 2018 status report and the November 5th discharge summary, and then explain that Mr. Johnson, with his own affidavit attached to the motion, that he had not been medicated as the October 2018 status report prescribes since November 1st, 2018. And so wasn't their position that because they didn't know he was fit on the day of the plea that there was a problem, not because the judge erred in initially finding him restored to fitness? That was part of the argument. Counsel certainly did raise the amendment. Was it in the motion? Yes. So it was by way of a claim of ineffective assistance of plea counsel. So when doing the prejudice analysis for the ineffective assistance of plea counsel claim, that's when post plea counsel brings out all of these facts about the sort of the factual invalidity of the restoration. So what's the specific language in the amended motion that raised the issue of the initial restoration? So that goes to the state's point that counsel, I think I will agree that counsel never uttered the words the restoration hearing was invalid. But counsel brought every necessary fact to the trial court's attention that should have brought to the trial court's attention that it was invalid. And I think page 177 of the report of proceedings during the hearing on the motion to withdraw the guilty plea is actually the key to understanding how the trial court understood post plea counsel's motion. So if we were to determine that it was not included in that motion, how is your position, your case, impacted by 604 and the Ratliff decision? So the court would find that it wasn't included in the post plea motion. We've argued in the reply brief specifically that Ratliff does not change the outcome or does not prevent this court from reaching the merits for two reasons. So first, Ratliff was primarily concerned in its waiver discussion with the nature of the error that was alleged. So in Ratliff, it was a Rule 401A violation. That, of course, is not a constitutional violation. And then the Rule 401A violation, because it's not constitutional, in part, was not a structural error. So here, we are, of course, dealing with, again, Mr. Johnson's fundamental right to have and fit to plead guilty and a right that this court has described in the same terms that it recently used in its more recent second complaint error cases to describe structural error. So your client hasn't waived the issue? No. So it's a 604? No. And again, I would take the court back to page 177 of the report of proceedings. So the trial court there sort of summarized what it had done at the restoration hearing. The trial court is saying to post-plea counsel, I found him restored to fitness. I'm sure I was the judge who found him unfit. I'm sure I was the judge who found him restored to fitness. And I think counsel's response is actually worth quoting in full, because it sort of brings to the floor that counsel brought to the court's attention this year. So counsel says, and I quote, you made that finding based on these records, and these records are so grossly inconsistent that how could you make a recommendation? You didn't have access to all these records. You don't get all these records. His counsel does. You just get a document saying he's fit. So the basis of the state's waiver argument in its response brief is largely based on the trial court not having had the opportunity to create the record necessary for this court to review the error. The state especially brings that argument out when it comes to our argument that the trial court did not have the October 2018 status report. But what this colloquy with the trial court shows, again, that's page 177 of the report of proceedings, is that counsel told the court, you didn't get the October 2018 status report. The report was inconsistent. It was inconsistent with the discharge summary. We have these medication issues. And then the trial court doesn't sort of resolve those contentions in any meaningful way. And page 183 of the report of proceedings then, which is where the trial court summarizes its findings on the motion to withdraw the guilty plea, the trial court sort of recounts all of the proceedings. It goes through the full procedural history of the case and reaffirms all of its past decisions. It reaffirms its decision to have found Mr. Johnson unfit originally. It reaffirms its decision to have found him restored to fitness. All in the face of counsel making the factual arguments that we basically repeated in the appellate court and in this court about why the restoration period was invalid. So, correct me if I'm wrong, but there was an October 30th, 2018, transport order signed by Judge Karen Wall. And then it was Judge Fahey who presided over the November 14th, 2018, restoration hearing. Now, when Judge Fahey, I think in the transport order signed by Judge Wall, didn't Judge Wall refer to the fact that she had some type of report attached? I don't recall there being a reference to an attached report. There was certainly a reference to the treatment team having found Mr. Johnson fit for trial. That's sort of the first paragraph of that order. So, she had the written progress report. So, we've got a progress report, and then we have a second document, and that was maybe the treatment or the restoration report. But when Judge Wall says that in her transport order that she had the progress report, so do you agree that she did say that in the transport order? If that's what the transport order says, I certainly have no reason to dispute that. Okay. And then after when Judge Wall starts talking about the fitness issue and, no, I'm sorry, Judge Fahey notes that the report was not contained in the court file, and then defense counsel immediately starts talking about the stipulation. Correct. So, do we have invited error here? No, Your Honor. So, the state makes two points on invited error related to the stipulation. Well, the state's arguments about invited error related to the stipulation are incorrect for two reasons. The first is to the extent the stipulation is in its proper form, which means that all it stipulates to is sort of putting the report before the trial court, it's not invited error. It just has the effect of admitting the report as evidence at the restoration hearing. So, it certainly would be invited error as to any claim that the 2018 status report was admissible or invited error as to any claim that it was wrong to admit the status report by way of stipulation. But it's not invited error as to the ultimate conclusion that Mr. Johnson was erroneously restored to fitness. And then the second point is that to the extent the stipulation is in improper form, meaning that all it served to do was stipulate to the ultimate conclusion of fitness, that is reversible error already under this Court's decision in people versus notice. So, on those two bases, we argue that it's not invited error because the stipulation either didn't stipulate to the ultimate fact that the trial court was obligated to find, or if it did, that's reversible error under this Court's precedent. And so, we don't know definitively whether or not the trial court had the 2018 treatment plan. And if that is the case, are we to presume that the judge followed the law and presumed that the judge did have access to it? No, Your Honor. So, first, as the initial premise of your question, I think we can conclude that the trial court didn't have the October 2018 status report, both because the judge said so and because the fact that she didn't have the report was brought to her attention during the hearing on the motion to withdraw the guilty plea. And she decided not to correct the record. The fact that it wasn't in the court file?  And, in fact, the only reason it's in the record at all is because it's attached to a post plea counsel's motion to withdraw the guilty plea. So, there's just no evidence that it was placed before the trial court. And the inconsistencies in the October 2018 status report that we point to in the briefs also sort of bolsters the appellate court's conclusion that the trial court didn't have the status report. Because under decades of appellate court precedent, cases like People v. Gillen, Gibson, Cook, the state's own case of People v. Esang, the trial court is obligated not only to accept the conclusion of the experts, but to evaluate the basis. I think this court's decision in People v. Bilyeu, which it cited in People v. Lewis, explains that an expert's conclusion is only as valid as the basis for it. So, accepting the premise of Your Honor's question that the trial court had the October 2018 status report, it wasn't just enough for the court to physically possess the status report and then accept the stipulation to it. And that brings me to sort of some of the other inconsistencies in the status report that sort of highlight what the problem was with the trial court accepting the stipulation. And, in particular, the portions of the report that purport to find Mr. Johnson restored to fitness, most of them do not actually speak to the initial basis on which he was found unfit in the first place. So there's only one page in the report, I believe it's 195 of the common law record, where Dr. Valbenini actually provides a narrative explanation for why Mr. Johnson was restored to fitness. It's about three sentences long. Two of those sentences explain that Mr. Johnson himself reported that he was ready to return to court. But I'll return this court's attention back to the state's case of People v. Esang, which cites a decision from this court called People v. McKinstry. And in McKinstry, this court made clear that a defendant's own opinions about his fitness to stand trial are not an adequate stand-in for determination of restoration to fitness. I believe McKinstry says if it were so, they believe McKinstry uses language like a sham or a mockery of fitness proceedings. So two of the sentences about Dr. Valbenini's conclusion are sort of just irrelevant as a matter of law. And then the only other piece of information he provides to explain why Mr. Johnson has been restored to fitness is that he was no longer belligerent and was acting behaviorally appropriate. But if this court goes back to look at the August 2018 status report, which is also attached as an exhibit to counsel's motion to withdraw the guilty plea, the August status report talks about Mr. Johnson sort of having an irrational understanding of the court proceedings, not understanding the charges and proceedings against him and not being able to cooperate with counsel on that basis. So the only substantive reason that Dr. Valbenini actually gives in the report for why Mr. Johnson was restored doesn't actually speak to the initial basis on which he was found unfit in the first place, which again bolsters the conclusion that the appellate court drew, which was that the trial court either didn't have the October 2018 report or didn't subject it to meaningful scrutiny. And it further bolsters another point that we've made about the trial court's error, which is without a basis for finding Mr. Johnson restored to fitness, that actually speaks to the initial reason he was found unfit. All that's really left of the stipulation is a stipulation to the bare conclusion that he was restored to fitness. And again, circling back, that is its own reversible error under this court's decision in People v. Lewis. Counsel, can you find your favor on these issues you've talked about? What would be wrong with having that order in a retrospective unit? So to sort of dig into the issues on what this court's correct remedy should be, it's important to understand first why the appellate court's remedy was wrong. And again, it's important to remember that what the appellate court did in sending this case back was reverse only the order finding Mr. Johnson to fitness. Now, the state argues, particularly in its cross-reply, that that's fine, because the status quo ante was a defendant coming to court with a medical conclusion that he was restored to fitness. But as this court's decisions make clear, as a uniform body of appellate court decisions make clear, fitness is a judicial determination, not a medical one. So it's not enough for a medical expert to have concluded that Mr. Johnson was restored to fitness. By vacating only the order restoring Johnson to fitness, he was returned to the status quo being presumptively unfit for trial. His plea, therefore, presumptively violates due process by definition. So the question then becomes, to Your Honor's point, what to do about that? And we've sort of summarized the history of this court's cases from People v. Brandon to People v. Mitchell. I won't belabor that point again this morning. But one of the things that it's key to understand about that line of cases is that it developed in a very specific legal context. So under the former version of the psychotropic medication statute, a defendant was automatically entitled to a fitness hearing. An error in that score was automatically a reversible error, and almost all of the cases leading up to Mitchell were death penalty cases, so it were automatic appeals to this court. So you just had a string of automatic reversals in very serious cases. But what People v. Neal said, which is the lead-up, the last case in the lead-up to People v. Mitchell, is that their retrospective fitness proceedings, this court should be skeptical of them if more than a year has passed. And then Neal carved out a very narrow exception for errors under the psychotropic medication statute because of the nature of the error in those types of cases. The only thing that needs to be retrospectively reconstructed for an error under the psychotropic medication statute were things like the dosage of the medication, the effect of the medication at that dose, and the defendant's known medical history at the time. So does the fact that the appellate court provided that if, at this retrospective hearing, it's found that the defendant was not fit, that he gets new proceedings, how does that impact our analysis? Should we consider that? It impacts the analysis because of what the appellate court did first. So the reason that the retrospective proceedings that were ordered by the appellate court in the form they were ordered are not sufficient is because it first vacated only the order finding a restoration of fitness. So we know that after vacating only the order restoring Mr. Johnson to fitness, he was presumptively unfit. His plea presumptively violates due process. The remedy for that has to be vigor of the plea, at least. And don't they provide the opportunity for that remedy to be imposed if they find at this retrospective hearing that he was unfit? They do. The problem is the unconstitutional condition of being subject to an unconstitutional plea persists unless and until that hearing sort of goes in Mr. Johnson's favor. And there are a couple of cases. People v. Gibson is sort of the primary example, a First District case from 2015, where the appellate court has vacated a conviction first and then sort of done the retrospective remand order in a form that's very similar to what the Fifth District did in this case. The reason that we're arguing that that's insufficient goes to argument two in the opening brief, which is that it's just sort of inconsistent with what we know about how the law of vacator works. So once a plea is vacated, the former proceedings are sort of wiped away. They have no relevance to the new proceedings. So if the plea has to be vacated, which we argue it does because of the nature of what the appellate court did in this case, then there's simply no constitutional relevance or relevance as a matter of the law of vacator to reaching back to the November 14th, 2018 proceedings to determine fitness sort of under what would be functionally new proceedings in 2026 or 2027. So that's argument two in the briefs about our sort of per se vacator rule for errors in retrospective fitness proceedings. Errors in restoration hearings, I'm sorry. Because errors in restoration proceedings create a presumptive state of unfitness, vacator is the remedy. If vacator is the remedy, there's no constitutional or legal relevance to any of the proceedings that came before. I see my light is on, so I do want to talk a little bit about the feasibility analysis that we pointed to in the briefs. But most of the reasons that a retrospective fitness proceeding would not be feasible in this case are sort of intertwined with the nature of the trial court's error at the restoration hearing. So we have a status report that the trial court said it never received that's internally and materially inconsistent. The bases for the restoration of the fitness in the status report don't actually speak to the initial findings of unfitness. I just want to clarify for my own purposes. So we have a progress report, and then the other report was referred to as the discharge summary, perhaps. I don't want to use up your time. You continue, and I'll find what I'm looking for. So the point being that the trial court then, several of the cases we cited both from this court and from courts in other jurisdictions also point to factors like whether the trial court engaged with the defendant in all of the restoration hearings. I'm sorry. You have a progress report, and you have a treatment plan. Yes. Okay. So the only October report that I'm aware of that's in the record is the October 22, 2018. The treatment plan that was attached to the amended motion to withdraw. Correct. And as far as the record reveals, that's the only report that was generated in October of 2018. So when the court says I don't have the October 2018 report in my court file, as far as the record shows, that's the only report the court could be referring to. So the court said it doesn't have that report. The court asks Mr. Johnson no questions at the two-page restoration hearing. The court doesn't ask counsel any questions aside from accepting a stipulation. So several cases that we've cited find retrospective fitness proceedings not feasible under circumstances even more favorable than that. And, of course, by the time this would get back to a retrospective proceeding, almost going on eight years would have passed since the initial finding of restoration, the initial erroneous finding of restoration to fitness. So sort of the same reasons that the trial court erred at the restoration hearing demonstrate the lack of feasibility for retrospective proceedings in this case if the court gets to that stage of the analysis. Mr. Bradley, would you like to conclude your argument? Yes, I'm sorry, Your Honor. So just for the reasons we've discussed, we would ask this court to affirm in part and in reverse in part the health court's judgment, vacate Mr. Johnson's plea, and remand for any proceedings. Thank you, Mr. Bradley. Good morning, counsel. Good morning, Your Honors. May it please the court, counsel, I'm Assistant Attorney General Michael Cibula on behalf of the people of the state of Illinois. Your Honors, in the appellate court, the defendant raised a brand-new claim that he had never raised in the circuit court, namely that the circuit court had committed a couple of procedural errors during the 2018 fitness restoration hearing. Now, of course, today he's talked about remedy and challenged the remedy the appellate court posed, and as we've pointed out in our brief, there's no basis for those complaints. It's a remedy he requested. But more importantly, he came to get to the issue of remedy for three reasons. First of all, he waived this new claim because he did not include it in his motion of withdrawals guilty plea. Second, the appellate court lectured us to consider it. And third, this new claim is meritless. If I may, Your Honor, I think it might be helpful to kind of touch a little bit on the procedural history here because it puts all these issues in context, and I think maybe some of it got lost a little bit in some of the defendant's arguments. Back in 2018, after the defendant was first charged with murder, he was examined by a doctor who said he was temporarily unfit, but he could be restored to fitness with treatment. So he was sent to a treatment center for about six months, I believe. Everyone agrees, including the defendant, that after he was treated there, the doctor who treated him concluded he was fit. Everyone agrees that the treatment center discharged him, and in the discharge papers, unequivocally stated he was recommended for trial. So in 2018, the court held that fitness restoration hearing. At that hearing, the judge had, in her hand, discharged papers from the treatment center, unequivocally saying they were releasing him because he was fit for trial. In addition, defense counsel... Counsel, what if that document is incorrect or was somehow processed in error? There's no reason to believe it was processed in error because, as I was mentioning, at the fitness restoration hearing, defense counsel stipulated that the doctor who treated the defendant at the treatment center would testify that he was fit to stand trial. In addition, defense counsel stipulated that the final progress report, the October 2018 progress report, counsel stipulated that that report concluded he was fit as well. So the judge had in her hand the document... If that is inaccurate, would that be ineffective assistance of counsel? So if we assume for the sake of argument that the defendant could come forward with, say, a witness, say another doctor saying, wait, we did not conclude he was fit, then that would be ineffective assistance of counsel. It wouldn't be a procedural error. But I would hear... When you look at the treatment plan, isn't that very likely what happened? When you look at the October 2018 document where it talks about his legal status, he was found unfit to stand trial, the very next box, change in legal status, no. And then you look at the very last page, fitness statement, where it says the treatment team currently believes that he is unfit to stand trial. It's bold and underlined. It says that with appropriate treatment, he can attain competency. But as of the date of that, 10-22-18, with Dr. Vallabhani, it's unsigned. And it says the treating psychiatrist, it's a finding of unfitness. So there's multiple points on this, Your Honor. So first of all, he stipulated in the trial court that this report, the report Your Honor is reading, found him fit. So under controlling law, people versus great, he cannot now contradict that stipulation. But on the factual matter, as Your Honors may understand, he's at this treatment center five or six months. They are periodically putting out reports similar to this. As Your Honors can understand, what do they do? They use a template. They don't draft a new report every time from scratch. So if you look at a report a month or two earlier than this, it's going to look very similar to this. But as time goes on, what do they do? They change certain things. They say, well, one initial report says we think he might have schizophrenia. They delete that and say he doesn't have schizophrenia. Over time, certain segments change. They don't. What we've explained in our brief is that this segment, if you look at earlier reports, is included in the earlier report. What obviously we believe obviously happened is this just was inadvertently not deleted. We know that because just a page earlier, his doctor says he is fit to stay in trial and a report will be sent. We know that then a report was sent to the court. That's the report Your Honor mentioned that received the court. We know that after this report, the treatment center did, in fact, discharge him and unequivocally stated that he was fit. And again, we know at the hearing his counsel stipulated two things, that the doctor who drafted this report would testify that he was fit and that the report itself concluded that he was fit. So that's why the court understandably found that he was fit. And again, counsel didn't argue that he was unfit. Counsel didn't present any evidence at the 2018 restoration hearing. So he's found fit. Case goes forward. The following year, he pleads guilty. Now, obviously, he files eventually a motion to withdraw his guilty plea with the assistance of new counsel. In that motion, he absolutely did not challenge the 2018 fitness restoration judgment. And, in fact, on the hearing on that motion, his counsel said, Your Honor, I agree that he was restored to fitness. He says we've had extensive conversations about this. His counsel said in the motion and in the court, the claim we are raising is an effective assistance of counsel. Their position was, yes, he was properly found to be restored to fitness, but he needed to continue taking medication. By the time he pleaded guilty the following year, he had not been taking that medication. So he said my counsel should not have let me go forward with that. But at all times in the post-plea proceedings in circuit court, his claim was that he was properly restored to fitness. So because he did not raise this claim, it's waived under 604D. The appellate court also lacked jurisdiction to consider it. Everyone agrees the notice of appeal did not even mention the 2018 fitness restoration judgment. It specified he was challenging the 2022 judgment denying his motion to withdraw his guilty plea, which, as I just mentioned, did not challenge the 2018 fitness restoration judgment, which means that his notice of appeal didn't either expressly or even implicitly give notice that he was challenging the 2018 fitness restoration judgment, which means the appellate court lacked jurisdiction to consider it. Also, this is clearly an embodied error. What are the two errors that were alleged? It's unclear if the court read the report and there was a stipulation. We're saying that it's unclear if the court read the report based on what was said at the 2018 restoration hearing. Clearly, counsel could have said, Your Honor, if you haven't read it, please read it now. The other error is about the stipulation. Again, that's the stipulation the defendant asked the court to accept. So it's clearly an embodied error here. In terms of the merits, Your Honors, again— Counsel, before you get to that, so if we were to decide that there was waiver pursuant to 604D for the failure to include the claim in the amended motion to withdraw the plea of guilty, where does that leave us? So that would not be the end of the road for a defendant. I mean, obviously, waiver can sometimes be a harsh remedy. It wouldn't be the end of the road. He could raise an ineffective sense of counsel claim. This court has said, I believe, people versus will be proper. The post-conviction petition, is that what you're suggesting? That's what this court said it will. Defendant himself has acknowledged that that's a path he can take. This court, I guess, could choose to address it here. I think that would be—if I'm being blunt, it would be a terrible idea for a defendant to ask this court to address it here. His post-plea counsel raised a colorable claim. His post-plea counsel said, look, there are some documents that said he was supposed to be taking medication. He said he was not on medication. That's a colorable claim to raise. His counsel also said on the record, as I just mentioned, his counsel said, I've spoken to him extensively. I believe he's restored to fitness. I believe he's able to assist in his own defense. So I don't know how he could possibly succeed on an ineffective sense of counsel claim on this record. I think it would be better for him to try post-conviction. I think he would still lose, but at least then he could try to find a doctor to say, wait, he wasn't really fit or something of that nature. But that would be the avenue if this court does and should find waivers. And so then if we basically say that it was waived, then we don't even get to the issue of the hearing as far as the fitness and the retrospective. Yeah. We don't even get to the issue of remedies because he's waived it. The public court didn't have jurisdiction. It's meritless, invited error. Is there a need for guidance on that issue? Absolutely not, Your Honor. And if I could actually just talk about the remedy for a second. So a lot of things the defendant has said, but the most recent say are contradictory. If you look at pages 26 and 28 of his opening brief, I think the defendant did a good job in his opening brief of canvassing courts across the country, other state supreme courts, federal courts of appeals, intermediate courts of all kind. On pages 26 and 28 of his brief, he says courts across the country have uniformly, and that's the word he uses, they have uniformly allowed retrospective fitness hearings as long as it's feasible to hold them. And whether it's feasible to hold them basically depends on what was the error in the original hearing and what kind of evidence would be available likely on remand. And they've allowed those retrospective hearings in all kinds of situations. He's asking his court to limit them to cases involving psychotropic medication. I would point out he was on medication, so that's a little bit of a strange argument for him to make. But courts across the country, his own cases, apply retrospective fitness hearings in cases that don't involve medication. Some cases that do. They've allowed them for initial fitness hearings. They've allowed them for restoration hearings. Here it is clearly feasible to hold one because what are the alleged errors? It's unclear whether the court read this final progress report and there's an issue with stipulation. So you just remand back and the court can read or perhaps reread the final report. Parties can modify their stipulation if the defendant really believes there's an issue with it. They can call other witnesses if they think it's necessary to try to resolve certain alleged inconsistencies. We don't think there are inconsistencies. But as the appellate court said, it is still the people's burden on remand to prove that he is fit. And if they don't prove he's fit, or the appellate could say, if the evidence is just inconclusive, or because so much time has gone on, we can't resolve it, then you have to vacate his conviction. That's a reasonable remedy. It's a remedy his own cases have imposed a number of times. So to Your Honor's point, no direction from this court is needed on the issue of what's a proper remedy because the defendant admits this is the uniform law across the country. Retrospective fitness hearings are permissible as long as the court thinks it's feasible to hold one. And here it is for the reasons I've mentioned. Unless there are any other questions, we would ask this court to vacate or reverse the appellate court's judgment because his claim is waived. The court lacked jurisdiction and it's meritless, as well as invited error. If this court disagrees with all of those arguments and reaches the issue of remedy, it should affirm the appellate court's judgment as to remedy. Thank you. Thank you, counsel. Some brief rebubble. It will be brief, Your Honor. I have one large overarching point of error in the state's argument that sort of affects basically every argument the state's made this morning and in its briefs, and it's the sidelining of the role of the trial court at fitness restoration proceedings. The state treats the fitness restoration proceedings in this case as acceptable because the trial court perhaps received evidence, at least some evidence, inconclusive evidence, that Mr. Johnson had been restored to fitness. But the role of the trial court at a restoration hearing is not just to receive and rubber stamp a report from the experts. It's to evaluate the basis for the expert's conclusion and allow the trial court to satisfy itself that Mr. Johnson is restored to fitness. And, again, it's important to point out here the state uses that sort of vision of the trial court's role at a fitness hearing to sort of cast these errors as procedural errors. But every procedural error that's alleged in the briefs speaks directly to the substance of the trial court's ultimate error in finding Mr. Johnson restored to fitness. Given that the fitness report is inconsistent, the October 2018 status report is inconsistent, it bolsters the appellate court's conclusion the trial court never received it because the trial court didn't tell us how it was resolving the inconsistencies in that report. It undermines the validity of the stipulation because if there's no consistent conclusion from the doctor who purported to author the report, then all that's left of the stipulation is a bare stipulation to the fact of restoration to fitness, which, again, violates this court's decision under Lewis. So the state has cited no case, and we've cited several, again, Gillen, Gibson, Cook, E. Tsang, which is one of the state's own cases, that reverse and remand for fitness errors because the trial court did not take an active enough role in evaluating differences of opinion about a defendant's fitness. And Gibson is a perfect example where one doctor pre-submitted a report finding the defendant fit, one submitted a report finding him marginally fit. Gibson looked at that and said, well, marginally fit isn't a valid fitness status under our law, so the trial court had to take a more active role to sort of resolve the inconsistencies in the conclusions of the experts. The trial court did not do that in this case. It did not ask Mr. Johnson any questions. Aside from accepting the stipulation, it did not ask his counsel any questions. Kagan. Counsel, may I ask you this? You very respectfully criticized the manner in which we have been handling these kinds of issues and point us to other states. And you suggest that there are better ways to handle this extremely difficult issue of trying to, at this moment, look back to see what someone's mental condition was years ago. What suggestions do you have as to a better practice that the cases that you cited to us would help us understand? Two answers. Two answers to that, Your Honor. The first is at least starting with a departure from what this court said in Peeble v. Mitchell about retrospective fitness proceedings being the norm. The state has said there's really nothing to fix there because the appellate court is doing case by case just fine. But we've cited cases in the briefs. I'll point out three of them right now, Peeble v. Lewis from the second district and Peeble v. Morris and Peeble v. Moore from the first district, that all remand for retrospective fitness proceedings on the sole basis of quoting this court's norm language in Peeble v. Mitchell. So there's absolutely work to be done to sort of clarify jurisprudentially what the constitutionally adequate remedy is in fitness cases. And then what the court ought to do about that is at least clarify or expand on the factors that it announced in Peeble v. Neal. So Peeble v. Neal again expresses skepticism about the possibility of retrospective proceedings more than a year later. The only basis that the court in Neal again gave to depart from that was sort of objective evidence about psychotropic medication and defendant's medical history. The appellate court in several cases, Gibson and Cook are two examples, has said, well, Neal says that it's fine to go to the – that 15 years isn't too long of a time after which to order a retrospective fitness proceeding. But the problem is Neal was so context specific that it doesn't provide sufficient guidance for determining whether a retrospective inquiry is feasible. So we pointed this case specifically to people who are Auerbach v. State out of the Florida Court of Appeals. One of the reasons we picked that case is because it's one of the only cases, blessing retrospective fitness proceedings, that involves errors at a restoration hearing. Almost all of the other out-of-state cases that we pointed to as sort of the uniform rule of feasibility are initial fitness cases where, again, a defendant – excuse me, Your Honor – where, again, a defendant is presumed fit and we don't sort of have the constitutional – the dire constitutional stakes of a restoration hearing. So this is a long answer to Your Honor's question, but I think another way – another place to look is to say feasibility is the test. It has to be more factors than what this court said in Neal. But giving the appellate court time to sort of percolate on what that might mean with counsel who understand going forward not to – to sort of embrace the idea that we have to actually litigate feasibility in the appellate court. We pointed out in the reply that one of the reasons the law has sort of stagnated on retrospective remedies is because the defense bar has looked at this court's decision in Mitchell and has said, well, this is the remedy the court says is the norm. This is the only remedy we'll request. So there's – but the California Supreme Court in People v. Rodas said, we'll leave room for a feasibility determination. We won't announce a test right now. We'll let the appellate court sort of percolate and wait until we actually need to define a set parameter for what it means to be feasible. That is an approach this court could also take. Rodas has a sort of similar progression of their law on fitness remedies as this state has seen as well. So it's sort of a good template for saying, yes, feasibility is the standard. We don't need to announce an exact standard in this case. Let the appellate court sort of, over case law, over time, sort of develop a test for feasibility unmoored from errors under the former psychotropic medication statute that sort of account for more subjective evidence that might be presented at a restoration hearing. If this court has no further questions, I'll acknowledge that we've covered a lot of law over a lot of topics and a lot of depth today. So if I can leave the court with only one thing, it is this. This court has to be sure. The constitutional right to be fit for trial is one of the most fundamental that we have. It protects the rights of the defendant to exercise every other right related to trial. The right to assist his counsel. The right to plead guilty or plead not guilty. The right to testify or not to testify. And this court, the trial court's decision at a restoration hearing should be able to give a court of review confidence that a defendant has adequately been found fit for trial. The restoration hearing in this case does not inspire that confidence, and the appellate court's remedy cannot restore it. So for the reasons we discussed this morning, those in the briefs, and we would ask the court to affirm in part the appellate court's judgment on the error at the restoration hearing, reverse in part its remedial judgment, vacate Mr. Johnson's plea, and remand for new proceedings at which his fitness can be adequately reassessed if necessary. Thank you, counsel. Case number 130932, People v. Johnson, is taken under advisement as agenda number one. Court thanks the attorneys for their arguments.